*Noble, Pinney & Willard* and *H. F. Payer,* for defendant in error.

---

## WAIVER OF A RIGHT OF FORFEITURE.

[Circuit Court of Ashtabula County.]

MARY L. FIELD AND ALBERT T. FIELD v. LAKE SHORE & MICHI- GAN SOUTHERN RAILWAY CO.*

Decided, October 12, 1897.

*Deed—Of Land to a Railroad—With a Right of Forfeiture—Dependent Upon a Condition Subsequent—Waiver of Right—Bars a Recovery for the Land Taken as for Appropriation and Without Compen- sation—Section 6448.*

F and others conveyed land to a railroad company in consideration of one dollar in hand paid and on the express condition that the road be constructed within two years.   After a lapse of seventeen years from the time the condition was to be performed, and after improvements had been placed upon the property which raised its value to $600,000, suit was brought by the grantors which in its present form is for recovery of the value of this land taken as by an appropriation and without compensation being made.   *Held:*
1. That the omission to take any steps for so long a period for the forfeiture of the title on the ground of failure of a condition

---

* Affirmed by the Supreme Court without report (62 Ohio State, 633).

subsequent, constitutes a waiver of the right to insist upon for-
feiture, and bars the plaintiffs from recovering the property.

2. The fact that in such a case the condition was not performed does
not give to the grantors the right to maintain a suit against the
grantee for recovery of compensation for the land, under the
provisions of Section 6448, authorizing actions as for appropriation
for land taken without compensation and not under contract in
writing.

LAUBIE, J.; FRAZIER, J., and BURROWS, J., concur.

The case of Mary L. Field and Albert Field against the Lake
Shore .& Michigan Southern Railway Company and William K.
Vanderbilt, has been submitted to us in the arguments of coun-
sel and extensive briefs, wherein the plaintiff ask to have the
judgment of the court below reversed for various claimed errors
as stated in the petition in error.

The court below charged the jury that the plaintiffs could
not recover in that action the value of the lands claimed as upon
an appropriation, and if that direction of the court to the jury
is correct, that ends all questions in this case. It is entirely im-
material what other errors may have been committed, if that was
not erroneous.

Now the action was brought, according to the ninth amended
petition before us, to recover the value of certain lands in this
county which were deeded to the railway company or its trus-
tees (the same thing) in 1871 by the plaintiffs, in consideration
of the sum of one dollar in hand paid and upon the condition
that was provided in the deed for the construction of the road
within the period of two years. It was alleged that this condi-
tion has not been complied with, but that the plaintiffs have not
enforced it, except as they seek to enforce it now. That is, they
seek now to recover the value of the lands conveyed, because the
condition was not complied with as to the building and operation
of the road, and the court instructed the jury, as I have said,
that the action could not be maintained.

Why might a recovery be had, as claimed by the plaintiffs?
They say that they are entitled to recover because of the fact that
this condition in the deed was not complied with, and that this
was the condition:

"Nevertheless, the above conveyance is upon the express condition subsequent, that if the Lake Shore & Southern Michigan Railway Company shall not within two years from this date have constructed and in operation its Ashtabula and Jamestown branch railroad, having its main business line running from the east side of the harbor of Ashtabula to Jamestown, in the state of Pennsylvania, then upon the demand of the said Mary L., her heirs and assigns, the said Clark shall reconvey the above granted lands to said Mary L., her heirs and assigns."

That the plaintiffs had in 1890 commenced an action by ejectment to recover possession of these lands and damages for their retention, and that that action is this one—this being the ninth amended petition in the case; that they abandoned the right to recover by ejectment and they now seek to recover the value of the premises, by alleging that this condition was never performed; that it is true they stood by and saw the railway company occupy the land and make large and valuable improvements upon it, but that they are now entitled to charge the defendant company with having taken the lands as by an appropriation, at least an appropriation in fact; and, therefore, that they should have compensation for the value of the land, which they declare to be six hundred thousand dollars. This, in short, is this ninth amended petition.

I need not recite the defenses. It is sufficient to say, as solely bearing upon what I shall pass upon in this case, that they deny that this condition was not performed. They allege in their answer that the company did perform it; that it built and operated its road and has been running it ever since; that it built it and operated it within the time mentioned, the two years specified in this condition subsequent, or whatever it may be, and that they did expend, as alleged in the petition, large sums of money in making large and valuable improvements and changing the aspect of the land, and they claim the plaintiffs are estopped from any relief by reason of the fact that they never made, up to the time of the commencement of the action, any claim of recovery of the land, nor any objection to the railroad company's using it, or that the condition had not been performed.

The rights of the plaintiffs to recover I have simply stated as they make it, that is, that under the facts and circumstances

of the case they were entitled to charge the company with the value of the premises, because compensation has never been paid and the company have appropriated in fact, the land; and, as I have said, the court below held that action could not be maintained by the plaintiffs and so charged the jury.

It is entirely immaterial, as we think, and as viewed by the court below, what the condition was, whether it was a covenant or a condition subsequent; but we are not disposed to hesitate about the matter, and consider it in the light claimed by the plaintiffs, that it was a condition subsequent and the performance of which might avoid the estate. If a condition subsequent, however, the thing did not work of itself, it had to be worked by somebody. A plow is a good thing to plow up land with, but it won't do much effective excavation unless somebody uses it with some kind of force. So a condition subsequent is a very good thing to rely upon, but it don't work out any one's rights of itself; the grantor in the deed must do something. If he wants to recover the land on the ground that the condition subsequent has not been performed, he has either got to enter the premises and take possession on that ground for the reason that the condition was not performed, or else he has to apply to a court that can grant him that relief and have the forfeiture declared and a reconveyance ordered of the premises. They commenced an action for that purpose upon ejectment in this instance, and finding that would not hold, they abandoned it; that is, we assume so, because it would not hold. An action of ejectment under the circumstances stated here, was not a remedy open to these parties, and we assume that is the reason they abandoned it, but the title remains in the grantee until some act is done by which he is ousted from the premises, either by the act of the party or by an act of the court, and the mere saying that the condition has not been complied with, works nothing for either party; it does not disturb title or possession of the grantee in any sense or form.

It seems to be assumed by counsel in argument here, that the mere declaration on their part that the condition was not performed works a forfeiture of all right and that they are entitled to recover the land. That is the assumption, and yet in these

same briefs, counsel for the plaintiffs in error, say this: ''A
conveyance upon a condition subsequent passes a present estate
in the land subject to be defeated by non-performance of the
condition and the estate continues until avoided for breach of
the condition by one having a right to avoid it.'' It is expressed
in a little different language from mine, but it includes what I
have said, that some one, who has a right to avoid it, must in
some way avoid it, either by taking possession of the premises and
ousting the grantee on the ground that he has not performed the
condition, or else by application to a court of justice upon that
proposition. They say: ''If devised, the condition is trans-
mitted, for the condition endures until performed, destroyed, re-
leased, waived or barred;'' and the same admissions are sub-
stantially made in this long brief of our Brother Jones; and yet,
after all, as I have said, the arguments proceeded upon the prop-
osition all the way through, that the mere claim on the part of
the vendor or grantor, that the condition has not been performed,
avoids the estate, and we are entitled to recover the full value
of it, if the party don't give it up, without entering into the
estate and dispossessing the grantee or without having an order
or decree of the court to confirm it.

As I have read from their own briefs, the right to enforce a
forfeiture in such a case may be waived and barred. It is ex-
pressly waived in this case, waived in the petition. They were
compelled to waive it, I suppose, from the knowledge of the fact
that the deed was made early in 1871, and the condition subse-
quent was to be performed within two years, and from that time
on to 1890—seventeen years after the condition was to be per-
formed (the road to be built and operated)—the plaintiffs re-
mained quiet, allowing, as they say, the railroad company to be in
possession and make large and valuable improvements and ex-
pend a large amount of money upon the land; and it is evident
from these undisputed facts, that they waived the performance
of that condition and they were barred from enforcing it. The
facts show that they waived it and were barred from enforcing
the condition subsequent, and therefore the estate remains in
the grantee, the title is there, the railroad company is owner in
fee of the land; and I say these facts not only appear uncontro-

verted and undisputed, but it is pressed as a ground for recovery in this ninth amended petition, that they did in fact waive the performance of the condition, waive it as a forfeiture, but they say that the condition was not in fact performed, and by reason of that, they still have the title and they offer it and deposit a deed with the clerk of the court of the lands to the defendants, and ask to recover the value of the land as upon appropriation, alleging that the company was not entitled to the land under the deed by reason of the failure to perform the condition, and therefore they must be considered as having appropriated it in fact wrongfully and without a right.

That is getting into a muddle of contradictions that I am not able to properly extricate. If, by way of error, the grantee becomes absolutely vested with the title to the premises, I do not see what title there is left in the plaintiffs to convey, and if that is so, I am at a loss to know what remedy they have. If they have a remedy, what is it? What else is left them, if they have waived the condition and the estate has become absolute in the vendees?

As I have stated, the court below held that in all events they could not maintain this action, and it is sufficient for us to determine whether the court was right in that or not. We are not called upon to determine whether there is any possible remedy left open to the grantors, the Fields. It is time enough to decide cases when they arise. The question is whether they were entitled to maintain this action. If they were not, that ends the question before this court at this time.

Is it true, or is it the law, that under such circumstances, being unable to recover or enforce a forfeiture of a condition subsequent, if there was one, unable to do that by reason of their own conduct, if for nothing else, if the condition had not been performed to the letter, unable to enforce it by reason of their own conduct—standing silently by for seventeen years and uttering no word of complaint—never suggesting to this railroad company "you do not own that land, here was a condition subsequent, you should have performed it but you have not performed it"—standing quietly by and perceptibly reaping the benefits to their other land of the construction of the road as it was run—for, according to the evidence, an immense traffic had been put upon it—

not by way of carrying passengers but of freight, they reaping the benefit of it and standing by, I say, are they entitled now to maintain this action to recover as upon an appropriation, in fact, upon the assumption that the facts in the case show that the company got possession, or is holding possession of the land under its power of eminent domain, an appropriation in fact, although not in law? It is somewhat difficult to grant them that proposition, that they are entitled to anything like that, and say they may recover six hundred thousand dollars for the value of these premises.

As I have said, I need not undertake to decide whether they have any remedy at all or not. If they have any, perhaps it would be an action for damage, for a breach of contract, if there is anything left, but I am at a loss to see how they can maintain this action, or in what respect the position assumed by the court of common pleas was wrong.

The much larger part of these briefs are devoted to the question of the construction of this deed, whether it is a condition subsequent or a covenant, and but little is said in regard to the right to maintain this action in its present form, so far as I could make out, and I have examined the authorities submitted by counsel for the plaintiffs in error upon that question. That is the only question we have in the case, because, as I have already said, as the court below said, it is entirely immaterial what you call that condition, whether you call it a covenant or a condition subsequent, if it is one by reason of the waiver, from the fact that they are barred from enforcing it as such, so it is entirely immaterial what you call it; the name gives no sanctity to it in any way or form.

They rely and cite to us *Chapman* v. *Railway Co.*, 6 Ohio St., 119, as sanctioning this action. It is a long case and I am not going to take up much time with it. I will read but two paragraphs of it, and I take that from the opinion; on page 139 the court say:

"The analogies, spirit and policy of the statutes before quoted, seem to point to such a remedy, and we are strongly impressed with the conviction that the equities of the case demand it. The particular injunction prayed for by the complainants in this case,

is in the nature of, and is sought by the complainants, in order that it may operate so as to enforce a specific performance of the contracts between them and the railroad company.

"It seems to be well settled that where it is found that a complainant was originally entitled to a specific performance, but pending the litigation, the very subject matter of the agreement, to which the complainant is found to be entitled, is abstracted or destroyed, a court of equity will not turn him over to seek his damages in a court of law, but will afford a remedy by compensation."

We concede that law to the fullest extent. No doubt it is true and beyond question, that where a party commences a proceeding for a specific performance of a contract, or, as the court here puts it, for an injunction, and looking to that remedy and pending that litigation, finding that he was originally entitled to a specific performance, the defendant abstracts or destroys the property in controversy, so that specific performance can not be decreed, a court of equity will afford him a remedy by compensation for the property which he ought to have received. That is good law or good equity, if you please, which is enforced in courts of equity. Whether it is appropriately applied to *Chapman* v. *Railway Co., supra,* I will not say, but it was an action commenced originally for an injunction, as the court declares, and they find the parties were entitled to that injunction originally and that the property became destroyed in litigation. If that has any bearing upon this case before us, to show that these parties are entitled to recover the value of these premises, why we are not able to see it.

A quite recent case is next cited; and in this connection I may say that it is a little difficult to understand from the petition and from the arguments submitted by some counsel for the plaintiffs as compared with the arguments of others of them, whether the argument is predicated upon the statute of the state, or whether they claim the right to exist independent of the statute. As to *Fries* v. *Railway Co.,* 56 Ohio St., 135, Spear, J., delivering the opinion, on page 136, says this:

"It appeared by the second amended petition, among other things, that the land taken (three and 56-100 acres) was part of a farm in Huron county, to which plaintiff, April 3, 1880, ac-

quired title, with every claim and right of action of the former owner; that prior to that date the Wheeling & Lake Erie Railroad Company, without the consent of the owners, took posession of the strip and constructed its railroad thereon; that June 25, 1886, the Wheeling & Lake Erie Railway Company, the successor of the said railroad company, without any grant or conveyance from or agreement with the plaintiff; without any right or title, legal or equitable thereto, and with the verbal consent of plaintiff on condition of compensation never performed, took possession of said strip, and has since used and now uses it as an integrad part of its permanent railroad.

"It was originally taken possession of without the consent of the owner, not under a deed conveying the title, transferring the title and the possession both as in this case—but it was a case where the defendant had taken possession without right or authority of any character, without the consent of the owner, and Judge Spear says further along in regard to this:

"As to the right of ejectment we suppose the law is entirely settled. He could not have that remedy. His consent to the entry would estop him (*Goodin* v. *Canal Co.*, 18 Ohio St., 169; *Penna. Co.* v. *Platt,* 47 Ohio St., 366). The reason for the rule lies in considerations of public convenience."

Then again, who are they that are entitled to the benefit of this statute? The court says, "Why, all owners, whose lands have been taken by such corporation and have not been appropriated and paid for, or are not held by any agreement in writing with the owner, shall have the benefit of this statute." And again, "If an agreement in writing has been executed by which the land is held, that is the measure of the owner's rights and such owner can not have the benefit of the statute. Verbal agreements are not recognized as binding, for the same reason, doubtless, that induced the enactment of our statute of frauds with respect to verbal contracts for lands, viz: to prevent frauds and perjuries. The natural effect of the words used is, that if the owner has a contract in writing, on which he may rely, that must be his sole reliance." It would hardly be worth while to read any more of that. That excludes the plaintiffs in this case from any such remedy, at least under the statute referred to, by which parties whose lands are taken without right or held without contract in writing, may compel an appropriation or may sue for compensation as upon appropriation. Section 6448, Revised Statutes.

In this case the land was taken possession of under an agreement in writing, under a deed conveying the legal title, and has evidently been held ever since in the same way.

The next case they refer to is *Longworth* v. *Cincinnati*, 48 Ohio St., 637, and I do not mean to take up much time with that case. Spear, J., delivered the opinion in that case also, and he says on page 640:

"It was shown by the pleadings that the city had wrongfully taken possession of the plaintiff's property, and had devoted it to the purposes of a street, a public use. No appropriation in accordance with law had been made, nor had compensation in money, or otherwise been awarded the owners. The city simply took the property by force and was continuing its unlawful use, refusing to yield it up to the owners, and also refusing to make any compensation for it, thus disregarding the plaintiff's natural rights, and violating their constitutional right secured by that section of the Constitution which provides that private property shall ever be held inviolate but subservient to the public welfare, and where taken for public use, a compensation therefor shall first be made in money."

It is hardly necessary to say anything more about that. Where a city had taken possession without any lawful authority by force and held the property for street purposes, there, undoubtedly, this statute would apply, because the city was not in possession under a contract in writing and had paid nothing, and in that character of a case it is well settled that the party may have one of the two remedies. He may sue for compensation for the value of the property, bringing in a deed and offering to convey the title, so when he gets the compensation the other party will have the title if it has not in the beginning, or he may compel any appropriation under Section 6448, Revised Statutes, the statute, which the court say is a cumulative remedy only, but it affords no aid to us here, where the parties are in possession under a conveyance.

The next case is *Platt* v. *Pennsylvania Co.*, 43 Ohio St., 228. Now that was a peculiar case. Originally the Lake Shore Company had commenced appropriation proceedings and had by appropriation proceedings obtained possession of the strip in question, one hundred feet wide. Many years thereafter, not

desiring to hold the whole strip, not using it all, they conveyed
twenty-five feet of it to the Pennsylvania Company, who there-
upon entered against the protest of the former owner or the
owners, and built its road and tracks and raised them up above
the level of the Lake Shore, so as to cut off his communication
to other parts and in that original appropriation not a dollar
was paid for the land.  Under the old Constitution, they could
set off benefits against the damages and so it was fixed in that
case; they just balanced the thing up, and the owner of the land
got nothing at all in compensation for his premises, when it was
appropriated by the Lake Shore road.  In addition thereto the
Pennsylvania Company took an additional amount of land and
this action grew out of those facts.  ''The Lake Shore Company
acquired an easement only, though an easement in perpetuity,
and where there is an abandonment of such easement, the in-
terest acquired reverts to the owner of the fee;'' and it was held
by the court that the action of the Lake Shore Railroad Company
was an abandonment of that portion of the land originally ap-
propriated to its use, having been abandoned by that company
as not being necessary or needed for the operation of its road,
and that by reason of such abandonment, the title and the fee
and the right of possession all reverted to the owner.

Now you see what a different state of facts that presents from
the one before us.  It was an appropriation proceeding for which
he had not received a dollar, therefore the owner who owned
the fee was entitled to recover it, but he acquiesced in the ap-
propriation, in fact made of it by the Pennsylvania Company
and tendered the deed and asked for the value of it and he got
it, and it has no more application to the case at bar than any
of the other cases I have referred to.

There is one case cited or referred to in the brief of counsel
in that case and commented upon by the court; that is *Junction
Railroad Company* v. *Ruggles,* 7 Ohio St., 1.

''It appeared that Ruggles executed to the Ohio Railroad
Company an instrument in writing, under seal, agreeing that
if the company would locate its road through any lands pos-
sessed by him, he would quit-claim to it so much land as the
company was authorized to take, to-wit, a strip one hundred
feet in width through such lands, for the purpose of location and

construction of the road, with the right to immediate posses-
sion, and of taking and converting to their own use stone, gravel,
etc. The company located its road through the lands of Rug-
gles, but before the road was completed, the state, which had
loaned its credit to the company, took possession of and subse-
quently sold the road, under the act of 1837 and a joint resolu-
tion passed in 1845. Ebenezer Lane became purchaser, who
conveyed his title to the Junction Railroad Company, and that
company proceeded to build the road through the lands of Rug-
gles on the strip so located by the Ohio Railroad Company,
Ruggles objecting and threatening to bring suit, the Junction
Railroad Company commenced an action and obtained an in-
junction restraining him from interfering with the construc-
tion of the road, and this court made the injunction perpetual.
Stress is placed by the court, and properly placed, on the fact
that the rights, as against Ruggles, were acquired, not by invok-
ing the power of eminent domain, but by contract, and the
case really turned on the assignability of the contract, in view
of the terms of the agreement, the legislation and the existing
facts.''

So here the possession acquired by the defendant in this case
was not under the power of eminent domain, or any claimed
exercise of any such power, but was by deed conveying title to
it, and confessedly it has that title now and it has possession
and has ever since retained possession under that deed.

Now under this statute of the state (see Sections 6448, Re-
vised Statutes, *et seq.*) authorizing a compulsory appropriation
proceeding, certainly this proceeding could not be maintained
for the reason that possession is held under and by virtue of
a writing or a contract between the parties, and that contract
is the sole measure of the remedy or rights of either, although
this was the precise point upon which the case went off below,
the court charging that this kind of a case or this particular
case, seeking for a recovery of the value as upon an appropria-
tion in fact, could not be maintained; no case has been cited
by counsel, wherein it ever said it could be maintained, not
one; I mean a case anything similar in facts to this, where the
land was taken possession of, nor under the exercise of the
power of eminent domain, whether in fact or in law they shall
appropriate, not under that, but where possession was taken
and given under the deed, under the title; any such case as

that, where the remedy is left to the party—where he is barred from claiming the forfeiture and can not rely upon the condition subsequent; any case that holds that in such an instance or under such a state of facts he may maintain an action to recover the full value of the premises as if no contract had ever been made; no such case of that character has been submitted to us and we can conceive of no such right vesting in the party.

If there is any remedy at all, it may be, as intimated by the court below in the fore part of its charge, an action for damages for a breach of contract, but it is time enough to pass upon that question when it arises. Suffice it to say, that here it is clear to us that this action can not be maintained and that the court below did not err in so charging the jury.

This disposes of the case and we need not refer to the second proposition, which the court charged the jury also prevented a recovery, that this condition was substantially performed, because it is entirely immaterial in this case whether it was performed or not. There is no right to maintain this action upon any principle of law or equity that we are aware of, and none certainly has been given to us, which shows that the party has any such right.

The judgment of the court below is therefore affirmed.